## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| EBIN NEW YORK INC., | ) | |
| | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | FILE NO. _____ |
| v. | ) | |
| | ) | |
| PNM TRADING, LLC, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## COMPLAINT

Plaintiff by and through its undersigned counsel, brings this action for trademark infringement, unfair competition, deceptive trade practices, and related causes of action, against Defendant and alleges as follows:

## PARTIES

1.       Plaintiff is a corporation organized and existing under the law of the state of New Jersey, with its principal place of business at 506 US-46, Teterboro, New Jersey 07608.

2.       On information and belief, Defendant is a Limited Liability Company organized under the laws of the State of Georgia, with its principal place of business

located at 3630 Burnette Park Drive, Suite B, Suwanee, Georgia and owned by Jung E. Shin.

3.      Defendant can be served through its Registered Agent, Jung E. Shin at the address 3630 Bernette Park Drive, Suite B, Suwanee, GA, 30024.

## JURISDICTION AND VENUE

4.      This is an action for, *inter alia*, trade dress infringement, unfair competition, and related claims pursuant to 15 U.S.C. §1125(a), and for related claims of unfair competition under the laws of the State of Georgia.

5.      This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121, and pursuant to 28 U.S.C. §§ 1331, 1332, and § 1338(a) and (b). This Court has supplemental jurisdiction over Plaintiff's additional claims, pursuant to 28 U.S.C. § 1367(a), because those claims are so related to Plaintiff's federal trade dress infringement claims, over which this Court has original jurisdiction, that the additional claims form part of the same case or controversy under Article III of the United States Constitution.

6.      This Court has personal jurisdiction over Defendant because Defendant is a Limited Liability Company organized under the laws of the state of Georgia and has a principal office located in Georgia.

7.      Venue is proper in this District under 28 U.S.C. § 1391(b) and (c),

08247.0005US01(SOW)

because a substantial part of the events and injury giving rise to Plaintiff's claims has occurred and continues to occur in this district and because Defendant is subject to this Court's personal jurisdiction.

## RELEVANT BACKGROUND ON
## PLAINTIFF AND THE PLAINTIFF TRADE DRESS

8.      EBIN is engaged in the business of developing, manufacturing, distributing, and selling cosmetics and beauty supplies such as wigs, hair care products, hair styling products, and skin cosmetic products, and color cosmetic products.

9.      EBIN entered into the beauty supply business in or around 2014.

10.      EBIN is the owner of the Federal trademark registrations 24 HOUR EDGE TAMER® (U.S. Registration No. 4,958,982, registered May 17, 2016) and 48 HOUR EDGE TAMER® (U.S. Registration No. 4,964,624, registered May 24, 2016).

11.      EBIN has become a trend-leader in the beauty supply industry, particularly in "edge control" products, by incurring substantial business expenses to develop and design its product packaging, finding suitable manufacturers, and vigorously advertising its products, as well as by leveraging the decades of beauty supply industry experience of its executives.

12.      On or about April 2015, EBIN began marketing its 24 HOUR EDGE

TAMER® hair pomade ("Edge Tamer") and related products in a unique double-layer container.

13.    EBIN was the first in the beauty supply industry to market hair pomade products and particularly "edge control" products in a double layered container described herein.

14.    On or about March 2016, EBIN began distributing certain acrylic plastic display cases to be used for containing and displaying EBIN's products, including the Edge Tamer products.

## EDGE TAMER AND ITS TRADE DRESS

15.    Edge Tamer is a water-based hair pomade gel.

16.    Edge Tamer is packaged in a distinctive, double-layered container.

17.    The outer layer of the double-layered container is made of polyethylene terephthalate, also known as PETE, and is transparent and clear in color.

18.    The inner layer of the double-layered container is made of a similar plastic substance as the outer layer, and is opaque and varies in color, *e.g.* grape-purple, lemon-yellow, orange, and chocolate.

19.    The outer layer and inner layer of the Edge Tamer container are removably press-fitted, and the outer layer is re-closeable, having a threadably

- 4 -

sealable cap that interfaces with the threads on the outer ring of the mouth of the outer layer.

20.     The following photographs are representative of the design of the packaging of Edge Tamer:



21.     EBIN introduced the above-shown pioneering and signature look of the double-layered container in 2015.

22.     There are two elements of distinctiveness of Edge Tamer's packaging: illuminance and spacing.

23.     The transparent and glossy outer-layer of the packaging causes light shown upon it to refract and reflect, which enhances the packaging's illuminance. When viewed from a distance, particularly on well-lit retail store shelves, this illuminance effect causes the Edge Tamer packaging to stand out and make it

distinctive from other product packaging in the market.

24.    The inner layer of the Edge Tamer container is anchored on the mouthpiece of the transparent outer layer. This mouthpiece is hidden under the cap of the container.

25.    This structure creates the space between the vertical and bottom surfaces of the inner layer and outer layer of the container. This in turn creates an appearance that the inner-layer is floating within the outer layer. This floating illusion imparts a luxurious feel to the packaging.

26.    When Edge Tamer containers are displayed on shelves side-by-side, the spacing between the inner layers and outer layers causes the opaque inner layers of the containers to be distanced from each other from one container to another, creating an appearance of sparser positioning of each individual container.

27.    The combination of the illuminance, floating illusion, and inner layer spacing gives eloquence and a high-end aesthetic to the Edge Tamer packaging.

28.    Prior to EBIN's introduction of this packaging into the market for "edge control" products, no other "edge control" products were packaged in such a way.

29.    The packaging for Edge Tamer lacks functionality.

30.    The transparent outer layer provides no more protection of the

- 6 -

pomade gel than an opaque layer would; the space between the inner and outer layer contains no gas other than ambient air. The packaging does not enhance the quality of the pomade gel by any means. In fact, the additional weight and unnecessarily large packaging add cost to the freight and shipping of the Edge Tamer product.

31.    Although the Edge Tamer packaging is aesthetically appealing, the design does not positively affect the cost or quality of the goods contained therein.

32.    Except to the extent the design indicates EBIN as its origin, the packaging design does not have a significant effect on the competition among manufacturers in the market for "edge control" products.

## RELEVANT BACKGROUND ON
## DEFENDANT AND ITS WRONGFUL CONDUCT

33.    Upon information and belief, Defendant engages in the business of manufacturing, distributing, and/or selling beauty supplies including hair pomades. Defendant is a direct competitor of Plaintiff.

34.    Upon information and belief, at least as early as November 2017, Defendant began purchasing and distributing EDGE BOOSTER hair pomade ("Edge Booster").

35.    Upon information and belief, Defendant purchases the 3.8 oz EDGE

- 7 -

BOOSTER products and sells them to retailers, namely, beauty supply stores in Georgia.

36.     Edge Booster is a water-based hair pomade.

37.     Edge Booster is packaged in a double layered container. The outer layer is transparent and clear in color. The outer layer is made of polyethylene terephthalate, also known as PET or PETE, and the inner layer being opaque and varying in color, made of similar plastic substance.

38.     The outer layer and inner layer of the Edge Booster container is removably press-fitted and the outer container is re-closable with a threadably sealable cap. The threads on the outer ring of the mouth of the outer layer interface with the threadably sealable cap.

39.     The following photographs are representative of the design of the packaging of the Edge Booster product:



40.    The packaging of Edge Booster is confusingly similar to the Edge

Tamer trade dress in all material aspects of appearance except for the texts, and the

heights of the inner and outer layers.

41.    But for the differences in the heights of the Edge Booster container

and the Edge Tamer container, the packaging for Edge Tamer and the packaging

for Edge Booster are fully compatible with one another and may be used

interchangeably. For instance, the constituent parts of the containers may be

combined in various combinations without any forced assembly. Seen on the left is

the outer layer of the Edge Booster container assembled with the cap and inner

layer of the Edge Tamer product. Seen on the right is the outer layer and inner

layer of the Edge Tamer container assembled with the Edge Booster cap:



42.    Defendant has not only copied the double layer design of the Edge

Tamer trade dress, but has also copied the metric specification of Edge Tamer and

its container, as well as the description of the product and directions for its use:



43.     The phrases on the packaging annotated in red in the above side-by-

side image such as "textured natural look," "dry or damp hair," and "formulated

in" are unique features of Plaintiff's products that are not industry standard and are

not present on other "edge control" products marketed in the U.S.

44.     Defendant has also mimicked Plaintiff's strategy of adding fruity

scent to the hair pomade or gel.

45.     The confusing similarities in Plaintiff's and Defendant's products are

indicative of Defendant's willful infringement of Plaintiff's trade dress and is a

violation of unfair competition laws.

## COUNT I
### (Trade Dress Infringement– 15 U.S.C. § 1125)

46.     Plaintiff restates and incorporates the averments set forth in the above paragraphs as if fully set forth herein.

47.     The trade dress of the packaging for Plaintiff's Edge Tamer product is not functional. Plaintiff's trade dress is not essential to the use of purpose of the Edge Tamer hair pomade, and Plaintiff's trade dress does not affect the cost or quality of the Edge Tamer hair pomade except for *adding* cost to the freight and shipping of the Edge Tamer product.

48.     Plaintiff's exclusive use of the Edge Tamer trade dress does not put competitors at a significant non-reputation related disadvantage.

49.     The trade dress of the packaging for Plaintiff's Edge Tamer is inherently distinctive and/or has taken on a secondary meaning within the beauty supply market. By virtue of the substantial exclusive uses, advertising, promotion, and consumer and marketplace recognition of Plaintiff's trade dress for many years, Plaintiff's Edge Tamer trade dress, has garnered substantial goodwill and reputation associated exclusively with Plaintiff, and is entitled to protection against likely confusion, deception or mistake.

50.     The trade dress of the packaging for Plaintiff's Edge Tamer was

- 11 -

inherently distinctive and/or had taken on a secondary meaning prior to Defendant's first sale of Edge Booster.

51.    The packaging of Defendant's Edge Booster product is confusingly similar to and closely resembles the trade dress of Plaintiff's Edge Tamer in shape, design, color, price, and packaging.

52.    The packaging of Defendant's Edge Booster is a colorable imitation of Plaintiff's Edge Tamer trade dress.

53.    The similarities between Defendant's Edge Booster packaging and Plaintiff's Edge Tamer trade dress are likely to cause confusion, mistake, and/or deception among the consuming public as to the source, origin, sponsorship, or approval of Defendant's Edge Booster by Plaintiff and create a likelihood that an ordinary consumer in the beauty supply market, specifically for the "edge control" market, will mistake Defendant's Edge Booster product for Plaintiff's Edge Tamer Product.

54.    Defendant's conduct is willful, deliberate, in bad faith, and undertaken with knowledge of Plaintiff's prior rights, and with full knowledge that Defendant has no right, license, or authority to use Plaintiff's trade dress or any confusingly similar variant thereof.

55.    Defendant's aforementioned acts constitute willful violation of

- 12 -

Plaintiff's rights in violation of the Lanham Act, Section 32, 15 U.S.C. § 1114.

56.    Plaintiff has been and will continue to be harmed by Defendant's wrongful conduct.

57.    By such wrongful acts, Defendant has caused, and unless restrained by the Court under 15 U.S.C. § 1116 will continue to cause, serious irreparable injury and damage to Plaintiff and to the goodwill associated with Plaintiff's trade dress. This harm constitutes an injury for which Plaintiff has no adequate remedy at law.

58.    As the direct and proximate result of Defendant's deliberate and intentional infringement, Defendant has been unjustly enriched while Plaintiff continues to suffer injury in an amount not yet ascertained.

## COUNT II
### (Unfair and Deceptive Trade Practices under O.C.G.A. § 10-1- 370 *et seq.*)

59.    Plaintiff restates and incorporates the averments set forth in the above paragraphs as though fully set forth herein.

60.    The acts of Defendant complained of herein constitute deceptive trade practices under the Georgia Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-1- 372.

61.     As a result of Plaintiff's hard work and substantial investments in developing and producing the Edge Tamer trade dress, all of which occurred long

- 13 -

before Defendant's wrongful acts complained of herein began, Plaintiff has built up valuable goodwill in the Edge Tamer trade dress. As such, the Edge Tamer trade dress has become associated with Plaintiff's Edge Tamer product, and has come to symbolize the reputation for high-quality standards of Plaintiff's Edge Tamer product.

62.    Defendant, with full knowledge of Plaintiff's trade dress and prior use of same, intended to and did trade on the goodwill associated with the Edge Tamer trade dress.

63.    Defendant's wrongful conduct has misled and continues to mislead and deceive the public as to the source of the goods and services offered by Defendant, permit and accomplish passing off of the goods and/or services offered by Defendant as those of Plaintiff, and/or falsely suggest a connection with Plaintiff.

64.    Therefore, Defendant has committed unfair and deceptive trade practices in violation of Georgia law O.C.G.A. § 10-1-372. Specifically, Defendant is passing off its goods as those of Plaintiff's, causing a likelihood of confusion or of misunderstanding as to the source, sponsorship, or approval of goods, causing a likelihood of confusion or of misunderstanding as to affiliation, connection, or association with Plaintiff, and creating a likelihood of confusion or of misunderstanding.

08247.0005US01(SOW)

65.    Plaintiff has been and will continue to be harmed by Defendant's wrongful conduct.

66.    Defendant's aforesaid acts have irreparably harmed Plaintiff and will continue to irreparably harm Plaintiff unless enjoined by the Court, as a result of which Plaintiff is without adequate remedy at law.

67.    Defendant has willfully engaged in the conduct described herein knowing it to be deceptive such that Plaintiff is entitled to its attorneys' fees under O.C.G.A. § 10-1-373.

68.    By virtue of the conduct described herein Defendant has acted in bad faith, has been stubbornly litigious, and has caused Plaintiff unnecessary trouble and expense, such that Plaintiff is entitled to recovery of its attorneys' fees pursuant to O.C.G.A. § 13-6-11.

## COUNT III
### (Unfair Competition under O.C.G.A. § 23-2-55)

69.    Plaintiff restates and incorporates the averments set forth in the above paragraphs as if fully set forth herein.

70.    Defendant's unauthorized use of Plaintiff's trade dress in connection with Defendant's advertising, promotion, and offering for sale of its products is likely to cause confusion, mistake and/or deception among the consuming public as

08247.0005US01(SOW)

to the source, origin and/or sponsorship of Defendant's products. The consuming public is likely to believe that Defendant's products are somehow sourced, affiliated or associated with, or licensed, sponsored, or endorsed by Plaintiff, when such is not the case.

71.     Defendant's unauthorized use of Plaintiff's trade dress has been intentionally, deliberately, willfully, and wantonly undertaken with a view and purpose of deceiving the public, and trading on and benefiting from the substantial reputation and goodwill associated with Plaintiff's trade dress.

72.     Defendant's conduct alleged herein constitutes unfair competition in violation of O.C.G.A. § 23-2-55.

73.     Plaintiff has been and will continue to be harmed by Defendant's wrongful conduct.

74.     Defendant's aforesaid acts have irreparably harmed Plaintiff and will continue to irreparably harm Plaintiff unless enjoined by the Court, as a result of which Plaintiff is without adequate remedy at law.

75.     In addition, Defendant's misconduct has been fraudulent, willful and malicious, such that it raises the presumption of conscious indifference to the consequences of its actions, thereby entitling Plaintiff to an award of exemplary damages in an amount to be determined by the enlightened conscience of the jury.

08247.0005US01(SOW)

76.     By virtue of the conduct described herein Defendant has acted in bad faith, has been stubbornly litigious, and has caused Plaintiff unnecessary trouble and expense, such that Plaintiff is entitled to recovery of its attorneys' fees pursuant to O.C.G.A. § 13-6-11.

### COUNT IV
### (Trade Dress Infringement and Unfair Competition under the Common Law of Georgia)

77.     Plaintiff restates and incorporates the averments set forth in the above paragraphs as if fully set forth herein.

78.     Defendant's unauthorized uses of Plaintiff's trade dress in connection with Defendant's advertising, promotion, and offering for sale of its products is likely to cause confusion, mistake and/or deception among the consuming public as to the source, origin and/or sponsorship of Defendant's business, products and/or services. The consuming public is likely to believe that Defendant's products are somehow sourced, affiliated or associated with, or licensed, sponsored, or endorsed by Plaintiff, when such is not the case.

79.     Defendant's unauthorized uses of Plaintiff's trade dress has been intentionally, deliberately, willfully, and wantonly undertaken with a view and purpose of deceiving the public, and trading on and benefiting from the substantial reputation and goodwill associated with Plaintiff's trade dress.

- 17 -

80.     Defendant's conduct alleged herein constitutes trade dress infringement and unfair competition in violation of the common law of Georgia.

81.     Plaintiff has been and will continue to be harmed by Defendant's wrongful conduct.

82.     Defendant's aforesaid acts have irreparably harmed Plaintiff and will continue to irreparably harm Plaintiff unless enjoined by the Court, as a result of which Plaintiff is without adequate remedy at law.

83.     As the direct and proximate result of Defendant's deliberate and intentional infringement, Defendant has been unjustly enriched while Plaintiff continues to suffer injury in an amount not yet ascertained.

84.     In addition, Defendant's misconduct has been fraudulent, willful and malicious, such that it raises the presumption of conscious indifference to the consequences of its actions, thereby entitling Plaintiff to an award of exemplary damages in an amount to be determined by the enlightened conscience of the jury.

85.     By virtue of the conduct described herein Defendant has acted in bad faith, has been stubbornly litigious, and has caused Plaintiff unnecessary trouble and expense, such that Plaintiff is entitled to recovery of its attorneys' fees pursuant to O.C.G.A. § 13-6-11.

08247.0005US01(SOW)

## COUNT V
### (Declaratory Judgment Pursuant to 28 U.S.C. § 2201 *et seq.*)

86.    Plaintiff restates and incorporates the averments set forth in the above paragraphs as if fully set forth herein.

87.    Plaintiff's 24 HOUR EDGE TAMER trade dress is inherently distinctive (or, alternatively, has acquired secondary meaning), not functional, and protectable.

88.    There exists an actual controversy between the parties regarding the protectability of Plaintiff's 24 HOUR EDGE TAMER trade dress.

89.    Because of this controversy, there is a cloud over the enforceability of Plaintiff's 24 HOUR EDGE TAMER trade dress.

90.    The ends of justice require a declaration of Plaintiff's rights to clarify Plaintiff's legal rights.

91.    Plaintiff is entitled to a declaration that the trade dress in the packaging for Plaintiff's product 24 HOUR EDGE TAMER is inherently distinctive or has taken on a secondary meaning within the relevant market.

92.    Plaintiff is entitled to a declaration that that the trade dress in the packaging for Plaintiff's product 24 HOUR EDGE TAMER is a protectable and enforceable intellectual property.

- 19 -

## JURY DEMAND

93.     Plaintiff demands a trial by jury on all disputed issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands a judgment in its favor and the following relief:

1. Granting Plaintiff a declaratory relief stating that the trade dress in the packaging for Plaintiff's product 24 HOUR EDGE TAMER is inherently distinctive or has taken on a secondary meaning within the relevant market;

2. Granting Plaintiff a declaratory relief stating that the trade dress in the packaging for Plaintiff's product 24 HOUR EDGE TAMER is a protectable and enforceable intellectual property;

3. Finding Defendant to have infringed on Plaintiff's trade dress;

4. Finding Defendant to have infringed on Plaintiff's trade dress with the knowledge that such imitation of Plaintiff's trade dress was intended to be used to cause confusion, to cause mistake, or to deceive;

5. Granting Plaintiff injunctive relief and ordering Defendant to cease the sale, advertisement, production, distribution, and trade in the commerce of their infringing product Edge Booster hair pomade and/or gel;

6. Ordering Defendant to recall all infringing products in the market

- 20 -

and to dispose of their inventory of such infringing products;

      7. Granting Plaintiff preliminary and permanent injunctive relief and prohibiting Defendant, its successors or assigns, and its officers, directors, partners, agents, subcontractors, servants, employees, attorneys, affiliates, licensees, divisions, subsidiaries and related entities, and all others acting in concert or participation with Defendant from developing, supplying, manufacturing, advertising, selling, distributing, or otherwise introducing into commerce any product packaging with an appearance similar to that of the packaging for Plaintiff's 24 HOUR EDGE TAMER similar to that of Plaintiff's;

      8. Ordering Defendant to remunerate Plaintiff, in the form of three times all profits derived by Defendant from, and/or all damages suffered by Plaintiff by reason of, Defendant's infringement of Plaintiff's trade dress;

      9. Granting Plaintiff monetary relief for lost profit, loss of goodwill, punitive damages, and legal fees and costs incurred herein;

      10.    Such other and further relief as the Court deems appropriate and just under the circumstances.

08247.0005US01(SOW)

Respectfully submitted this 4th day of May, 2021.

**MORRIS, MANNING & MARTIN, LLP**


By: */s/Stephen M. Vaughn*
    Stephen M. Vaughn
    Georgia Bar No. 219482
1600 Atlanta Financial Center
3343 Peachtree Road, N.E.
Atlanta, Georgia 30326
Tel.: (404) 233-7000
Fax:  (404) 365-9532

*Attorney for Plaintiff Ebin New York, Inc.*

- 22 -